IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNE SZPINDOR | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTH CARE SERVICE CORPORATION, | ) |
| (HCSC) a Mutual Legal Reserve Company, | ) |
| d/b/a Blue Cross Blue Shield of Illinois, | ) |
| | ) |
| Defendant. | ) |

*PLAINTIFF DEMANDS TRIAL BY JURY FOR ALL ISSUES SO TRIABLE*

**COMPLAINT AT LAW**

NOW COMES ANNE SZPINDOR MD, by her attorneys, Jeffrey Strange & Associates, and complains of the defendant, Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Illinois and Blue Cross Blue Shield of Texas ("BCBSIL"), as follows:

**The Parties**

1.  Anne Szpindor is a natural person residing in Cook County, Illinois and has been a licensed physician for 37 years in the State of Illinois.

2. Defendant Health Care Services Corporation ("HCSC") is an Illinois corporation with its corporate headquarters located at 300 East Randolph Street in Chicago, Illinois.  HCSC offers managed health care services through an unincorporated division known as Blue Cross Blue Shield of Illinois ("BCBSIL") and is a functional ERISA fiduciary. Due to the manner in which BCBSIL functions, all of the Defendants are functional ERISA fiduciaries and, as such, they must comply with fiduciary

1

standards. Moreover, in making coverage determinations relating to their BCBS Insureds, the BCBS Entities must comply with the terms and conditions of the applicable health care plans and otherwise must comply with ERISA and its underlying regulations.

## Jurisdiction and Venue

3. Defendant's actions in administering employer sponsored health care plans including determination reimbursement for providers who perform health care services to BCBSIL are governed by ERISA 29 USC 1001, *et seq.* Plaintiff asserts subject matter jurisdiction for her ERISA claim under 28 USC 1331 (Federal question) and 29 USC 1132(a) ERISA and pendent jurisdiction under 28 USC 1367.

4. By virtue of Blue Cross's transacting business in Illinois, contracting to insure persons located in Illinois at the time of contracting, making promises substantially connected with Illinois, and/or being a corporation organized under the laws of Illinois.

5. Venue is appropriate to Plaintiff's claims under 28 USC 1391 and 29 USC 1132(c)2 because Anne Szpindor and Blue Cross are residents of Cook County, Illinois; Blue Cross conducts a substantial amount of business in Cook County, Illinois; and/or a substantial part of the events or omissions giving rise to the claims asserted in this complaint occurred in Cook County, Illinois.

## Nature of the Action

6. Blue Cross has intentionally and unlawfully reduced the compensation paid to Anne Szpindor by wrongfully removing her as an "in network" provider and has demanded a refund for amounts already paid based upon properly submitted health care claims for services she rendered from to 2009 to 2011 to patients insured under health insurance policies or plans issued or administered or partly administered by BCBSIL

pursuant to the Employment Retiree Income Security Act, hereinafter referred to as "ERISA".

7. Blue Cross Blue Shield of Illinois controls approximately 80% of the insurance business in Illinois and has a near monopoly.  It is virtually impossible for a doctor to get a job or have a practice in Illinois without being a "provider" to Blue Cross Blue Shield of Illinois.

8. Before Anne Szpindor treated the insureds, for the period 2009 to the present, Blue Cross impliedly promised that compensation for allergy shots under billing codes 95165 and 95117 would be allowed as had become customary over a period in excess of 20 years.  After Anne Szpindor provided the services, Blue Cross refused to provide the promised coverage at the billing rate that had become customary and accepted between the parties.  Blue Cross in contravention of these agreements demanded retroactively that multiple shots and procedures be billed as one procedure thereby substantially reducing compensation to Anne Szpindor along with a demand for the return of almost one million dollars.

9.  For years Dr.  Szpindor, in accordance with accepted practices within the medical community, provided one shot for each antigen a patient needed.  Anne Szpindor followed recognized medical procedures in refusing to mix certain allergens that were incompatible. Blue Cross has demanded that all antigens be mixed together in one shot and billed that way even though it is not a medically accepted practice.

10. Through this action Anne Szpindor challenges Defendant's conduct as alleged herein which constitutes violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. 1001, *et seq.* ("ERISA") and breach of contract.

11.   Defendant engaged in a concerted action to try to force the Plaintiff to repay funds to which they are not entitled, by: (1) falsely accusing her of fraud or having obtained improper overpayments in receipt of past benefit payments, when instead Defendant simply made retrospective adverse benefit determinations under ERISA based on arbitrary and capricious findings that services in question were fraudulently or improperly billed; (2) demanding immediate recoupment of such past payments without honoring her appeal request or other due process considerations, though acknowledging her right to appeal. Defendant based the claim on false and invalid accusations of improper billing practices, Defendant acted as prosecutor, judge and jury as part of  a scheme to extract nearly $784,183.06 from the Plaintiff.

12.   Anne Szpindor, Plaintiff, was a participant in a network of providers pursuant to a written agreement with Blue Cross and Blue Shield of Illinois, ("BCBSIL") an unincorporated division of Defendant Healthcare Services Corporation, ("HSC").  As a participating provider Plaintiff agreed to provide covered services to BCBSIL's insured. A copy is attached hereto as Exhibit A.

13.   When Anne Szpindor, Plaintiff, provided health care services to BCBSIL insureds, she would as a matter of course obtain assignment from their patients which would authorize her to file claims for benefits with BCBSIL under the terms and conditions of their patients' health care plans with BCBSIL.

14.   BCBSIL demanded the repayment of $784,183.06, by letter on September 8, 2011 as a result of their in-house investigation of Plaintiff's bills. A copy of the letter is attached hereto as Exhibit B.

15.   Plaintiff sought to pursue an appeal through arbitration/mediation as provided

on pages 6 and 10 of Exhibit A, where she could demonstrate the demands were improper and that she had received proper payment and therefore owed nothing. BCBSIL acknowledged the arbitration/mediation on November 28, 2012 and further acknowledged her request to be reinstated as a provider while the arbitration/mediation was ongoing.

16. BCBSIL never followed up on the arbitration/mediation agreement and in fact ignored all subsequent requests for mediation and appeal. BCBSIL also refused to reinstate Plaintiff Anne Szpindor as a provider.

### Allegations Common to All Counts

### The Parties

17. Anne Szpindor is an individual who practices medicine in Cook County, Illinois.

18. Blue Cross is an Illinois not-for-profit mutual legal reserve company with its principal place of business in Chicago, Illinois. It is one of the largest health insurance companies in the United States.

19. Blue Cross controls the amount of benefits it pays for health care services received by an insured through the use of "in-network providers," i.e., those providers who contract with Blue Cross, and "out-of-network providers," i.e., those providers who are not in a contractual relationship with Blue Cross.

20. Blue Cross also provides services to health insurance plans as a third-party administrator ("TPA"), where it receives health insurance claims for self-funded plans, processes those claims, forwards payment of the claims, and at some point is reimbursed by the plans for the claims.

21. From Nov 8, 2010 and up until May 31, 2012, Anne Szpindor had a written contract with Blue Cross and was therefore an "in-network provider" during that period. A copy of the contract is attached hereto as Exhibit A.

22. The contract states in the first paragraph:

> "The purpose of this Agreement is to assure, without interference in the provider-patient relationship, predictable and predetermined levels of coverage and reimbursement for services rendered by a Contracting Provider to persons entitled to benefits under programs offered and/or administered by the Plan…"

23. Anne Szpindor had been an "in-network provider" for over twenty years and her billing and coding practices had never been disputed by Blue Cross Blue Shield of Illinois and she accepted Blue Cross' usual and customary fee allowance.

24. Monee Petsod of Blue Cross began an audit of Anne Szpindor's practice in April of 2011 asking for only a sampling of actual billing.

25. On or about August 5, 2011, Anne Szpindor was summoned to a meeting with Monee Petsod and Steve Adams, both senior investigators in the special investigations division of Blue Cross Blue Shield of Illinois.

26. Anne Szpindor was not told in advance what would be discussed and what the purpose of the meeting was to be. When she arrived she was told the meeting was to discuss the audit that Monee Petsod had conducted of her billing records. At the end of the meeting she was told that she owed $784,183.06 to Blue Cross Blue Shield of Illinois.

27. On September 8, 2011 a formal demand for payment was made along with Blue Cross Blue Shield's rationale for the demand. A copy is attached hereto as Exhibit B.

6

28. On April 12, 2012 another meeting was held at the offices of Blue Cross Blue Shield where Anne Szpindor asked for an opportunity to present her side of the audit dispute.

29. At the April 12, 2012 meeting the panel from Blue Cross Blue Shield suggested that a letter be written requesting a new medical review hearing. A copy of the letter is attached hereto as Exhibit C.

30. A formal hearing was never afforded Anne Spzindor but she was allowed on May 31, 2012 to provide her written appeal disputing the findings of Monee Petsod of Blue Cross Blue Shield of Illinois. A copy of the May 31, 2012 appeal is attached hereto as Exhibit D.

31. The issues appealed were as follows:

   Issue I:   Billing for Procedure Code 94070 When None Has Been
              Performed $11,686.21

   Issue II:  Use of Procedure Code 94010  $82,292.09

   Issue III: Billing Inappropriately for allergen immunotherapy for dust
              mites $21,014.09

   Issue IV: Billing for pulse oximetry  $2,303.86

   Issue V  Billing for Procedure code A4305 when none used $9,660.11

   Issue VI: Billing procedure for services by dietary services professional
              $5,865.94

   Issue VII: Billing excessive amount of Allergy Immunotherapy
              $592,689.77

32. In October of 2012 Patrick Dorsey, Executive Director, Special Investigations Department of Blue Cross Blue Shield responded to the May 31, 2012 appeal, stating that he and a medical director had completed their review of the appeal. Dr. Szpindor's

appeal was upheld in regard to Issues I, II & V but Blue Cross Blue Shield's findings on issues III, IV, VI & VII was sustained. A letter recalculating the amount demanded was promised in the letter of October 12, 2012, but none has been forthcoming. The letter also stated that no further appeals were available. A copy of the letter is attached hereto as Exhibit E.

33. BCBSIL provider agreements, effective from 2009 to the present, contained the following mediation provision:

I. Any disputes arising out of the terms of the Provider Agreement shall be governed by and subject to the laws of the State of Illinois.

II. In order to avoid the cost and time consuming nature of litigation, any dispute between Plan and Contracting Provider arising out of, relating to, involving the interpretation of or in any other way pertaining to this Agreement, or any prior Agreement between Plan and Contracting Provider, shall be resolved using alternative dispute resolution mechanisms instead of litigation. Plan and Contracting Provider agree and acknowledge that it is their mutual intention that this provision be construed broadly so as to provide for individual mediation and/or arbitration of all disputes arising out of their relationship as third party payer and provider. The parties further agree that resolution of any dispute pursuant to this Agreement shall be in accordance with the procedures detailed below:

A. Initial Resolution by Meeting or Mediation of Dispute

1. Plan or Contracting Provider, as the case may be, shall give written notice to the other of the existence of a dispute (the "Initial Notice").

2. If Plan and Contracting Provider mutually agree that a meeting to attempt to resolve the dispute would be advantageous, representatives of Plan and Contracting Provider shall meet not later than thirty (30)

calendar days after delivery of the Initial Notice in order to attempt to resolve the dispute. Subsequent meetings may be held, if mutually agreed.

3. If no meeting is mutually agreed, or if the dispute is not resolved at any meetings held, the party giving the Initial Notice shall submit the dispute to mediation by an organization or company specializing in providing neutral, third party mediators. The mediation process shall be coordinated by the submitting party with the mediator and shall be subject to the following agreed-upon conditions:

(a)  The parties agree to participate in the mediation in good faith;

(b)  The parties agree to have present at the mediation one or more individuals with decision-making authority regarding the matters in dispute. Either party may, at its option, be represented by counsel. Contracting Provider may, at its option, also have present at the mediation a representative of any professional society of which it is a member;

(c)  The mediation will be held in Chicago, Illinois within sixty (60) days of the submission to mediation, unless the parties mutually agree on a later date or a different venue;

(d)  The parties shall each bear their own costs and shall each pay one-half of the mediator's fees and costs, unless the mediator determines that one party did not participate in the mediation in good faith, in which case that party shall pay all of the mediator's fees and costs;

(e)  The parties agree that the obligation to mediate (but not the obligation to arbitrate) is not applicable to any dispute that was pending in any court on the effective date of this Agreement, or that had been submitted to binding arbitration on or before the effective date of this Agreement.

34.  The contract between Anne Szpindor and BCBSIL provides for mediation of disputes.

35.  Anne Szpindor on November 23, 2012, requested mediation but BCBSIL has failed and refused to do so in violation of their contract.

36. Anne Szpindor has been considered by Blue Cross to be an "out-of-network provider" since June 1, 2012 which means that BCBSIL pays only 60% of an allowed charge.

37.  As a result of BCBSIL wrongfully removing Anne Szpindor as an in network provider and the increased costs to her patients she has suffered loss of income and a 50% reduction in the patient base she has spent 37 years building.

38.  That her damages as a result of the wrongful actions of BCBSIL exceed $50,000.

## COUNT II ERISA --

## FAILURE TO PROVIDE ADEQUATE APPEALS PROCESS

39.  Plaintiff realleges paragraphs 1-38.

40. Defendant must pay benefits to BCBSIL insured, or to their providers pursuant to assignments, that are insured, funded or administered by Defendants pursuant to the terms of their ERISA plans.

41.  BCBSIL's failure to provide and make available an adequate appeals process violates 29 USC 1133(b), 29 USC 1132(a)(1)(B), 29 USC 1132(a)(3) and the alleged contract attached as Exhibit A and as result excuses the requirement to exhaust all internal plan remedies in regard to ERISA claims.

42.  BCBSIL's failure to provide a full and fair review of denied claims violates 29 USC 1133(2) and the Plaintiff requests that it be enjoined pursuant 29 USC 1132(a)(3).

43.  The actions of BCBSIL are adverse benefit determinations under ERISA, which require compliance with strict standards established by that statute, 29 USC 1133(b) and its regulations, 29 CFR §2560.503-1., standards with which Defendant fails to comply.

44.  The Plaintiff cannot identify specifically which plans and terms were violated by Defendant because Defendant purposefully withholds that information in order to frustrate any attempt to appeal adverse determinations

## COUNT III ERISA-WRONGFUL RECOUPMENT

45.  Plaintiff realleges paragraphs 39-44.

46.  ERISA applies to the actions of Defendants in attempting to force recoupment of fees already paid. The fees are to be kept by Defendant on information and belief. ERISA §406, 29 USC § 1106(b)(1), makes clear that BCBSIL, as a claims fiduciary, may not take ERISA trust funds earmarked for a participant or beneficiary and convert the funds to its own account.

47.  If BCBSIL is claiming recoupment without attempting to keep the money for itself, Defendant is making an adverse benefit determination under ERISA which requires compliance with strict standards established by statute and regulations, standards with which Defendant has failed to comply.  These actions created new liabilities for the patient members to the Plaintiff.  On information and belief no notice was sent to the patients or to Plaintiff on actual knowledge by Defendant as required by ERISA.

48.  ERISA further applies to Defendant's actions in forcing recoupment.  In such circumstances, the Defendant makes a determination that the treatment at issue is a Covered Service and the proper payment is identified.  To punish Plaintiff she is treated

as an out of network provider and the patient as a result only receives a 60% payment benefit instead of 80%. By doing so, the Defendant has made a new adverse benefit determination under ERISA, and is therefore subject to the same ERISA requirements as any such adverse benefit determination.

49. At a minimum the Defendant is required to notify the patients whose services are at issue, with adequate disclosure of proper procedures for appealing such a determination. 29 CFR §2560.503-1(h).

50. Defendant's demand for recoupment is an after the fact reversal of prior benefit determinations under 29 CFR § 2560.503-1(f)(iii)(B) and said statute requires the recoupment or claim for restitution to be made within 30 days after submission of claims or in some instances 90 days pursuant to 2560.503-1(f)1.

51. Defendant failed to do this and therefore barred

52. If timely made the demand for recoupment issued by Defendant would be a claim for restitution under ERISA. ERISA does not permit restitution unless the assets at issue are easily identified and separate from other assets. 29 USC § 502(a)(3). Upon information and belief this was not done and as a result are barred from seeking repayment from Plaintiff due to the violation of ERISA. The Defendant is further barred from obtaining equitable restitution under federal law because it violated the legal standard.

53. As redress for Blue Cross Blue Shield's broken promises, Anne Szpindor seeks compensatory damages for breach of contract and ERISA violations and the interest at 9% as required by the Timely Payment for Health Care Services provision of the Insurance Code, 215 ILCS 5/368a(c) plus reimbursement for all BCBSIL payments

after May 31, 2012 at the rate of 80% not the 60% paid.

**WHEREFORE**, Plaintiffs demand judgment in their favor against Defendants as follows:

A. Finding that Defendant has breached its contract with Plaintiff and ordering it to reinstate Plaintiff as an in-network provider;

B. Award Damages to Plaintiff for the breach of Contract of the Provider Agreement

C. Declaring that Defendant has failed to provide a "full and fair review" to Ann Szpindor under 29 U.S.C. § 1133, and awarding injunctive, declaratory and other equitable relief to ensure compliance with ERISA and its regulations;

D. Enjoining Defendant from continuing to pursue its recoupment efforts as detailed herein, and ordering it to pay proper benefits in the form of a return of any sums previously paid by or withheld from Plaintiff;

E. Awarding Plaintiff disbursements and expenses of this action, including reasonable counsel fees, in amounts to be determined by the Court;

F. Granting such other and further relief as is just and proper.

JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Jeffrey Strange*

Jeffrey Strange
Jeffrey Strange & Associates
717 Ridge Road
Wilmette IL 60091

13

847-256-7377
ARDC# 3122923